```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**ALLISON WILLIAMS,**

       Plaintiff,

**v.**                    //   CIVIL ACTION NO. 1:05CV51
                                            (Judge Keeley)

**ADVERTISING SEX LLC, ET AL,**

       Defendants.

### MEMORANDUM OPINION AND ORDER MEMORIALIZING COURT'S MAY 14, 2007 ORAL ORDER GRANTING DEFENDANT JOSEPH VITAGLIANO'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The Court must decide whether a defendant's allegedly defamatory internet website advertisement link sufficiently established his contacts with the State of West Virginia so that he could reasonably foresee being haled into court in this state. Because it did not, the Court **GRANTS** the defendant's renewed motion to dismiss.

### I. Procedural Background

On March 18, 2005, the plaintiff, Allison Williams ("Williams"), filed a complaint naming the defendant, Joseph Vitagliano ("Vitagliano"), as one of approximately sixty defendants. Williams alleged that Vitagliano defamed her by posting a link on his website which indicated that she, as Miss West Virginia, participated in a pornographic video that was

**WILLIAMS V. ADVERTISING SEX LLC, ET AL.**                             **1:05CV51**

**MEMORANDUM OPINION AND ORDER MEMORIALIZING
COURT'S MAY 14, 2007 ORAL ORDER
GRANTING DEFENDANT JOSEPH VITAGLIANO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

available for download. Vitagliano filed a motion to dismiss on July 5, 2005, claiming that the Court had no specific personal jurisdiction over him because he had not directed any business toward West Virginia and did not have sufficient actual contact with West Virginia residents. On July 19, 2005, Williams filed a brief opposing dismissal of her claim against Vitagliano in which she claimed that jurisdiction was proper because, as defined by <u>Zippo Mfg. v. Zippo Dot Com</u>, 952 F.Supp. 1119 (W.D. Pa. 1997), Vitagliano's website was interactive and the effects of the defamation had been felt in West Virginia. In the alternative, Williams sought an opportunity to conduct jurisdictional discovery. <u>Id.</u>

On February 17, 2006, the Court denied Vitagliano's motion to dismiss without prejudice and granted Williams's motion for jurisdictional discovery. After a protracted discovery battle, Vitagliano renewed his motion to dismiss on November 13, 2006, arguing once more that the case should be dismissed because the Court had no personal jurisdiction over him. Vitagliano noted that, under <u>ALS Scan, Inc. v. Digital Serv. Consultants, Inc.</u>, 293 F.3d 256 (4th Cir. 2002), there was no evidence that he possessed

**WILLIAMS V. ADVERTISING SEX LLC, ET AL.** 1:05CV51

**MEMORANDUM OPINION AND ORDER MEMORIALIZING
COURT'S MAY 14, 2007 ORAL ORDER
GRANTING DEFENDANT JOSEPH VITAGLIANO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

the manifest intent to enter West Virginia, a necessary element of personal jurisdiction. In her response, Williams argued that not only was there sufficient evidence in the record to infer intent to enter West Virginia but there also was evidence of actual contact with the state.

## II. Factual Background

Williams is a citizen of the state of West Virginia. In 2003, she competed in the Miss West Virginia pageant and ultimately earned the title of Miss West Virginia. After being crowned Miss West Virginia, she competed in the Miss America pageant in Ocean City, NJ. Because of her participation in the various pageants, Williams became eligible to receive scholarship funds contingent on character clauses. In August 2004, while searching online for a newspaper article concerning a school appearance related to her responsibilities as Miss West Virginia, Williams discovered materials linking her name and the title of Miss West Virginia to a pornographic video ("Sex Tape") posted on numerous websites. Allegedly, the Sex Tape falsely depicted Williams as a Virginia news reporter engaging in various graphic sex acts in a news van. By affidavit, Williams avers that she never appeared in the Sex

3

**WILLIAMS V. ADVERTISING SEX LLC, ET AL.**                           **1:05CV51**

**MEMORANDUM OPINION AND ORDER MEMORIALIZING
COURT'S MAY 14, 2007 ORAL ORDER
GRANTING DEFENDANT JOSEPH VITAGLIANO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Tape, and has never appeared in any other pornographic video. Nor has she ever lived in Virginia or been employed as a news reporter. Williams seeks legal and equitable relief from numerous foreign and domestic defendants, including Vitagliano, under a number of West Virginia common law theories, including defamation, false light invasion of privacy, appropriation of identity invasion of privacy, unjust enrichment through usurpation of right of publicity, outrage, civil conspiracy, veil-piercing, and vicarious liability. She also seeks permanent injunctive relief. She asserts that this Court has <u>in personam</u> jurisdiction over Vitagliano.

Vitagliano is a citizen of the state of New York. He is the owner and developer of the website www.taxidrivermovie.com ("Taxi Driver"). Taxi Driver focuses on celebrity gossip and regularly features nude or semi-nude photographs of female celebrities. Taxi Driver also includes social, political and celebrity commentary that Vitagliano personally drafts and posts on a regular basis. There are multiple hyperlinks to other adult-oriented sites in the margins of the Taxi Driver website on which users may click if they so choose. Taxi Driver does not solicit sales, nor may visitors purchase products from the website or Vitagliano. The only income

**MEMORANDUM OPINION AND ORDER MEMORIALIZING
COURT'S MAY 14, 2007 ORAL ORDER
GRANTING DEFENDANT JOSEPH VITAGLIANO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

that Vitagliano generates from the website is the result of advertising arrangements he has with other online entities.

As part of such an arrangement with the website www.juicybucks.com ("JuicyBucks"), Vitagliano agreed to host on the Taxi Driver website hyperlinks to products and services of JuicyBucks.[1] Vitagliano, thus, posted advertisement hyperlinks provided by JuicyBucks that directed users to the JuicyBucks website and products. Vitagliano rotated the links on a daily basis to feature a different JuicyBucks product.

On March 6, 2005, Taxi Driver displayed an advertisement that stated "ALLISON WILLIAMS, Miss West Virginia and TV reporter [sic] gets banged in the camera truck!" The advertisement was in the form of a hyperlink that directed users to the JuicyBucks site where they could then purchase access to view the Sex Tape. Directly beneath the hyperlink advertisement on the Taxi Driver website was text that read "Posted by vit at March 6, 2005 at 9:52 AM."[2] For approximately two weeks, the Allison Williams Sex Tape

---

[1] Since 2005, Vitagliano has received two checks for ad sales from the online entity www.juicybucks.com, one for $120.00 and one for $80.

[2] Vitagliano admits to using the moniker "vit" when posting on Taxi Driver.

**WILLIAMS V. ADVERTISING SEX LLC, ET AL.**  1:05CV51

**MEMORANDUM OPINION AND ORDER MEMORIALIZING
COURT'S MAY 14, 2007 ORAL ORDER
GRANTING DEFENDANT JOSEPH VITAGLIANO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

advertisement was one of ten links to JuicyBucks video products that Vitagliano posted on Taxi Driver.

In addition to the content of the allegedly defamatory link, several other facts concerning both Taxi Driver's internal and external makeup are relevant to whether this Court has personal jurisdiction over Vitagliano.  First, in addition to providing material for web users to read and view, Vitagliano allowed people who visited Taxi Driver to send him an e-mail or post comments directly to the website. The commenting function is a product of HTML and JavaScript code that Vitagliano included in Taxi Driver's internal html composition.  This feature permits interested visitors to post their name, e-mail address, url and a comment directly to the site, thereby enabling other visitors to view the feedback.  The code also provides an option so that users can opt for Vitagliano to "remember them."  The e-mailing function, which is independent of the commenting function, appears twice on the face of Taxi Driver, and each e-mail link is the product of an html code.[3]

---

[3] The option to "Email the Pimp" at the address taxidrivermovie@gmail.com appeared near the top of the site in the left sidebar. A direct link to taxidrivermovie@gmail.com also appeared at the bottom center of the site.

**WILLIAMS V. ADVERTISING SEX LLC, ET AL.**                          **1:05CV51**

**MEMORANDUM OPINION AND ORDER MEMORIALIZING
COURT'S MAY 14, 2007 ORAL ORDER
GRANTING DEFENDANT JOSEPH VITAGLIANO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

---

Next, Vitagliano engaged in activities that are commonly used on websites to attract visitors and monitor traffic. Located at the bottom center of Taxi Driver was a link to the BLT Syndicate. The stated purposes of the BLT Syndicate are "(a) to combine members' forums into one; (b) to promote each other's sites, [and] (c) to share traffic, content, and ad revenue."[4] Vitagliano also incorporated metatags into Taxi Driver's internal html code which are descriptive words and phrases used to help direct search engines when indexing a website.[5] Between 2000 to October, 2006, Taxi Driver received 16,063,967 visits. This statistic is made available by the JavaScript enabled AddfreeStats, which Vitagliano included in his site.[6]

Vitagliano claims he has never met Allison Williams and does not have significant family or personal contacts with West Virginia, does not regularly travel to West Virginia, and, in fact,

---

[4] Def.'s Supplemental Resp. to Interrogs. 8. Vitagliano is also one of the founding members of the BLT Syndicate. Id.

[5] Taxi Driver's metatags directed robots to index, follow and revisit after 1 day, defined its distribution as global and its rating as general, provided copyright information and identified the author as Taxi Driver.

[6] According to AddfreeStats's website, the service "...provides to webmasters free statistics on their website visitors." AFS Tools – Web Hosting News – Web Hosting Articles, http://main.addfreestats.com/ (last visited July 12, 2007).

**WILLIAMS V. ADVERTISING SEX LLC, ET AL.** 1:05CV51

**MEMORANDUM OPINION AND ORDER MEMORIALIZING
COURT'S MAY 14, 2007 ORAL ORDER
GRANTING DEFENDANT JOSEPH VITAGLIANO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

has never physically entered the state. At a hearing on May 14, 2007, Vitagliano's counsel re-asserted his client's claim that the Court had no personal jurisdiction over him because Williams had proffered no evidence that he ever intended to or did enter West Virginia.

## II. Applicable Law

### A. Personal Jurisdiction Generally

In a diversity action, a federal court's exercise of personal jurisdiction is limited by the long-arm statute of the forum state. See Fed.R.Civ.P. 4(e). In this case, the West Virginia long-arm statute, W.Va. Code § 56-3-33, is co-extensive with the limits of due process under the U.S. Constitution. Touchstone Research Lab, LTD. v. Anchor Equipment Sales, Inc., 294 Supp.2d 823, 827 (N.D.W.Va 2003). Accordingly, to determine whether the exercise of personal jurisdiction is proper in this case, the Court need only analyze whether the exercise of personal jurisdiction over the defendant comports with a Fourteenth Amendment due process analysis. For purposes of this inquiry, on a pretrial motion the plaintiff need only make a prima facie showing of personal

**WILLIAMS V. ADVERTISING SEX LLC, ET AL.**                          1:05CV51

**MEMORANDUM OPINION AND ORDER MEMORIALIZING
COURT'S MAY 14, 2007 ORAL ORDER
GRANTING DEFENDANT JOSEPH VITAGLIANO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

jurisdiction. Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 396 (4th Cir. 2003).

There are two forms of personal jurisdiction - specific and general. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). General jurisdiction is more difficult to establish because the plaintiff must show that the defendant had sufficiently extensive contacts with the forum state apart from the acts alleged in the complaint. Id. at 414-416. The hallmark of general jurisdiction is that the defendant's contacts are so extensive that he should reasonably foresee being haled into court in the forum state. World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980). In contrast, specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit arising out of, or related to, the defendant's contacts with the forum state. Id. at 414.

Both parties agree that Vitagliano does not have sufficient contacts with West Virginia for the Court to exercise general jurisdiction over him. They disagree, however, about whether the exercise of specific jurisdiction is proper.

9

**WILLIAMS V. ADVERTISING SEX LLC, ET AL.**                    **1:05CV51**

### MEMORANDUM OPINION AND ORDER MEMORIALIZING COURT'S MAY 14, 2007 ORAL ORDER GRANTING DEFENDANT JOSEPH VITAGLIANO'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

To determine whether traditional specific personal jurisdiction exists, courts in the Fourth Circuit consider the following factors:

> (1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable'.

ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)(citing Christian Science Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 216 (4th Cir. 2001), and Helicopteros, 466 U.S. at 414 & n. 8). "When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction." Helicopteros, 466 U.S. at 414(quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). Consideration of the three factors from ALS Scan permits a court to evaluate that relationship consistent with due process.

The first factor emphasizes that a defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court there. World-Wide

10

**WILLIAMS V. ADVERTISING SEX LLC, ET AL.** 1:05CV51

**MEMORANDUM OPINION AND ORDER MEMORIALIZING
COURT'S MAY 14, 2007 ORAL ORDER
GRANTING DEFENDANT JOSEPH VITAGLIANO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Volkswagon Corp v. Woodson, 444 U.S. 286, 297 (1980). The second factor requires that the claim asserted against the defendant must arise out of the defendant's contact with the forum state. The third factor considers the reasonableness of the jurisdiction, ensuring that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice," as elaborated in International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

### B. Electronic Activity As A Basis for Personal Jurisdiction

When a defendant's contact with the forum state is limited only to the Internet, the appropriate inquiry is to determine how much virtual contact is enough to satisfy the traditional due process analysis and justify the exercise of personal jurisdiction over a defendant who has only entered the forum by electronic means. The seminal case for determining whether an electronic contact over the Internet is sufficient to establish personal jurisdiction is Zippo Manufacturing v. Zippo Dot Com, 952 F.Supp 1119 (W.D.Pa. 1997). Zippo utilized a sliding scale model of contacts, reasoning that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the

**WILLIAMS V. ADVERTISING SEX LLC, ET AL.**                     1:05CV51

**MEMORANDUM OPINION AND ORDER MEMORIALIZING
COURT'S MAY 14, 2007 ORAL ORDER
GRANTING DEFENDANT JOSEPH VITAGLIANO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

nature and quality of commercial activity an entity conducts over the Internet." Id. at 1124. Specifically, in Zippo, the district court described the sliding scale of contacts via the Internet as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Id. (internal citations omitted).

The Fourth Circuit adopted and adapted Zippo's sliding scale model of contacts in ALS Scan, which held that a state may, consistent with due process, exercise jurisdiction over a person

**WILLIAMS V. ADVERTISING SEX LLC, ET AL.** 1:05CV51

**MEMORANDUM OPINION AND ORDER MEMORIALIZING
COURT'S MAY 14, 2007 ORAL ORDER
GRANTING DEFENDANT JOSEPH VITAGLIANO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

outside the forum state when that person (1) directs electronic activity into the state, (2) with the manifested intent of engaging in business or other interactions within the state, and (3) that activity creates, in a person within the state, a potential cause of action cognizable in the state's courts. ALS Scan, 293 F.3d at 714. This conjunctive, three-factor test is designed to preclude individuals from being amenable to personal jurisdiction solely because they place information on the Internet. Id. Rather, it focuses on the traditional minimum contacts doctrine of purposeful availment and an actor's intent to enter the forum state. Thus, an individual will only be subject to personal jurisdiction pursuant to the test articulated in ALJ Scan if there is manifest evidence that he both intended to enter a state and also actually did so. Id.

### III. Analysis

**Vitagliano Directed No Electronic Activity Into West Virginia**

This Court must determine whether, under the facts set forth above, Vitagliano is subject to specific personal jurisdiction in West Virginia. In applying the factors from ALS Scan, the parties agree that the third factor, whether the alleged activities of the

13

**WILLIAMS V. ADVERTISING SEX LLC, ET AL.**                          1:05CV51

**MEMORANDUM OPINION AND ORDER MEMORIALIZING
COURT'S MAY 14, 2007 ORAL ORDER
GRANTING DEFENDANT JOSEPH VITAGLIANO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

defendant, if true, create a cognizable cause of action for defamation in West Virginia, is satisfied. The key question, therefore, is whether there is sufficient evidence in the record to satisfy the first factor of ALS Scan, requiring that Vitagliano must have directed electronic activity into the State. Only if Williams can satisfy this factor need the Court address whether Vitagliano directed any such electronic activity into West Virginia with the manifest intent of engaging in business or other interactions within the State.

The Zippo interactivity analysis that the Fourth Circuit adopted in ALS Scan weighs heavily in determining whether Vitagliano directed electronic activity into West Virginia. Vitagliano designed Taxi Driver as a website with some interactive features; users were encouraged to submit comments that would then appear on the site directly below the original post by Vitagliano. On March 11, 2005, at 7:56 a.m., for example, a user comment was posted to the Taxi Driver website immediately below the JuicyBucks hyperlink to the Sex Tape.[7] While the substance of the comment did not concern the JuicyBucks hyperlink, under the Zippo sliding scale

---

[7] Included with plaintiff's Exhibit A is a CDROM, AW00001, on which a cached copy of Taxi Driver may be found at M0450966.htm.

14

**WILLIAMS V. ADVERTISING SEX LLC, ET AL.** 1:05CV51

**MEMORANDUM OPINION AND ORDER MEMORIALIZING
COURT'S MAY 14, 2007 ORAL ORDER
GRANTING DEFENDANT JOSEPH VITAGLIANO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

analysis, this level of interaction goes beyond that of a purely passive website that merely makes information available on the Internet. Thus, the Taxi Driver website rises above the passive end of Zippo's sliding scale spectrum.

Taxi Driver, however, does not clearly fall at the commercial end of the Zippo spectrum because Vitagliano did not conduct business or enter into contracts with users through the website. It, therefore, falls within the intermediate area of the Zippo sliding scale, where personal jurisdiction is neither presumptively granted nor denied. As a consequence, the Court must examine the level of activity on Vitagliano's website in order to determine if he actually directed electronic activity into West Virginia. Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 399 (4th Cir. 2003).

In this case, the parties' jurisdictional discovery examined the level of activity on the website but did not bring to light any evidence of Vitagliano's actual contact with West Virginia users of the Internet. In fact, despite an extensive effort, Williams has been unable to establish even a prima facie showing that a West Virginian ever clicked on the Allison Williams hyperlink or even

**WILLIAMS V. ADVERTISING SEX LLC, ET AL.**                          1:05CV51

**MEMORANDUM OPINION AND ORDER MEMORIALIZING
COURT'S MAY 14, 2007 ORAL ORDER
GRANTING DEFENDANT JOSEPH VITAGLIANO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

visited Taxi Driver. Since Taxi Driver was semi-interactive, the absence of actual contacts with West Virginia dooms any argument by Williams that this Court may exercise personal jurisdiction over Vitagliano because of his websites's electronic activity. The Court therefore concludes that Vitagliano did not direct electronic activity into West Virginia and lacks sufficient minimum contacts with the State such that he would have expected to be haled into court here.[8]

### IV. Conclusion

Under Fourth Circuit case law, the central jurisdictional inquiry in the Internet domain is purposeful availment. Given the plaintiff's failure to establish a prima facie case that Vitagliano purposefully availed himself of contacts in West Virginia, it would offend notions of fair play and substantial justice to hail him into court here. Therefore, the Court **GRANTS** Vitagliano's motion to dismiss for lack of personal jurisdiction and **DISMISSES** him from this case.

---

[8] Pursuant to ALS Scan, because Williams has failed to establish that Vitagliano actually "directed" the allegedly defamatory electronic activity into West Virginia, the Court need not determine whether Vitagliano had a manifest intent to engage in business or other interactions within the State.

**WILLIAMS V. ADVERTISING SEX LLC, ET AL.**                           **1:05CV51**

**MEMORANDUM OPINION AND ORDER MEMORIALIZING
COURT'S MAY 14, 2007 ORAL ORDER
GRANTING DEFENDANT JOSEPH VITAGLIANO'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

The Clerk is directed to transmit copies of this Order to counsel of record and all pro se parties.

DATED: August 30, 2007.

                                            /s/ Irene M. Keeley
                                            IRENE M. KEELEY
                                            UNITED STATES DISTRICT JUDGE