IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ALLISON WILLIAMS,

      Plaintiff,

v.                  //    CIVIL ACTION NO. 1:05CV51
                                (Judge Keeley)


ADVERTISING SEX LLC, ET AL,

      Defendants.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND DISMISSING DEFAULT DEFENDANTS FOR LACK OF PERSONAL JURISDICTION

After the Clerk entered defaults against Defendants Web Traffic, Inc., Scott Moles, Zorg Enterprises, Chris Buckley, Troy Savege (named as Troy Doe), Eyegasmic Enterprises, Raymond Williams, Advertising Sex, LLC, Nicholas Cain, Cain Web Design Inc., Charlie Hintz, Mental Shed, LLC, Darren McLaughlin, Performance Marketing Group, Inc., Scott Rickett, Gen0cide Productions, Tracy Whitewick (named as Tracy Doe), Manuel Noten, Craig Brown, Webresultz Pty. Ltd., FrostyLips, LLC, Henry Rottine, Kenneth M. Boyd, Edith G. Boyd, PalmBeach-Online.com, Inc., Peter Smallwood, Purple Sky Productions, and Michael Vacietis (collectively, the "Default Defendants"), the plaintiff, Allison Williams ("Williams"), moved for default judgment against them (dkt. no. 325). Consequently, the Court must now determine whether the Default Defendants established sufficient contacts with the

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

State of West Virginia through their Internet websites to have reasonably foreseen being haled into court in this state. Because the Court finds that there are insufficient contacts between the Default Defendants and West Virginia, it **DENIES** Williams's motion for default judgment and **DISMISSES** the Default Defendants from this case.

## I. Procedural Background

On March 18, 2005, Allison Williams, a former Miss West Virginia, filed a complaint naming, among others, the Default Defendants. She alleged that these defendants defamed her through postings on their individual websites indicating that, as Miss West Virginia, she had participated in a pornographic video (the "Sex Tape") that was available for download. The Default Defendants have never appeared to defend against this claim.

In its Memorandum Opinion and Order entered on August 31, 2007 (dkt. no. 313), the Court discussed the factors for exercising personal jurisdiction over a defendant based only on Internet activity. In that Order, the Court dismissed another defendant in this case, Joseph Vitagliano, after concluding that it lacked personal jurisdiction over him based solely on his Internet

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

activity. Williams's pending motion for default judgment asserts that the Court has personal jurisdiction over the Default Defendants based on their Internet activity. Thus, the reasoning in the Court's earlier Order involving defendant Vitagliano is relevant to the analysis here.

## II. Factual Background

Because the Court's previous Order discussed in detail the factual background of this case, it will not repeat that background in detail here. In general, Williams is a citizen of the State of West Virginia who earned the title of Miss West Virginia in 2003. While searching online in August 2004, she discovered postings on numerous websites that linked her name and the title of Miss West Virginia to an unidentified woman in the Sex Tape. Williams avers that she never appeared in the Sex Tape, and has never appeared in any other pornographic video. Her complaint seeks legal and equitable relief from numerous foreign and domestic defendants, including the Default Defendants, under a number of West Virginia common law tort theories.

The Default Defendants have not appeared in this case, and the only factual background about them known to the Court is what

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

Williams has pled in her Complaint. The following summarizes her account of the activities of each Default Defendant relevant to their jurisdictional contacts.

### A. JuicyBucks Defendants

Johnathan Landon is a citizen and resident of Queensland, Australia. Web Traffic Inc. is an Australian business entity of unknown form located in Queensland, Australia. Landon and Web Traffic jointly hold the registrations for the Internet domain names www.juicybucks.com, exposed.paparazzifilth.com, www.paparazzifilth.com, www.celebritymoviepost.com, and www.thumbfix.com (the "JuicyBucks Websites"). Scott Moles (a/k/a juicybucks and juicybucks_scott) is a citizen and resident of Queensland, Australia, and is associated with the JuicyBucks Websites. Zorg Enterprises is an Australian business entity of unknown form that is registered with the Australian Tax Office and Australian Securities & Investment Commission to do business under the name of Scott Moles. It also is associated with the JuicyBucks Websites. Chris Buckley (a/k/a JuicyBucks Chris, and R-C-E) is a citizen and resident of Queensland, Australia, and is associated with, inter alia, the JuicyBucks Websites. After failing to

**MEMORANDUM OPINION AND ORDER DENYING**
**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**
**AND DISMISSING DEFAULT DEFENDANTS**
**FOR LACK OF PERSONAL JURISDICTION**

return a waiver of service of process, Williams served Chris Buckley and Scott Moles via private personal service on July 2, 2005, and January 1, 2006, respectively. These defendants, known collectively as the "JuicyBucks Defendants," have not participated in this case since the time they were served and are now in default.

Williams alleges that exposed.paparazzifilth.com ("Exposed.PaparazziFilth") is in the business of selling the Sex Tape to online users. As of October 19, 2004, Williams alleges that Exposed.PaparazziFilth posted, among other things, an advertisement to purchase the Sex Tape. The advertisement juxtaposed an image of Williams with an unidentified woman in the Sex Tape and included text identifying the individual as "Miss West Virginia and TV Reporter," along with other material that Williams alleges is defamatory. To view the Sex Tape, a person would click on the hyperlinked text "Allison Williams" and join Exposed.PaparazziFilth by entering credit card and other information. When paying by credit card, a customer must enter his or her billing address, including a prompt for a particular state. "West Virginia" was one of the states available from a pull-down

**MEMORANDUM OPINION AND ORDER DENYING**
**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**
**AND DISMISSING DEFAULT DEFENDANTS**
**FOR LACK OF PERSONAL JURISDICTION**

menu.  The cost of accessing Exposed.PaparazziFilth and watching the Sex Tape was either $4.95 for an unlimited trial access or $29.95 for unlimited monthly access.

All the other JuicyBucks Websites contain similar juxtaposed images of Williams with an unidentified woman in the Sex Tape and hyperlinked text that redirected the user to Exposed.PaparazziFilth, which allowed the user to purchase the Sex Tape.  Williams alleges that the JuicyBucks Defendants orchestrated a large civil conspiracy to defame and otherwise harm her and to profit from the defamatory postings, and that they accomplished this by (1) steering traffic to www.juicybucks.com and, in turn, Exposed.PaparazziFilth, and (2) offering financial incentives and access to free content to other websites willing to promote and reproduce the defamatory postings, and establish hyperlinks on their websites to the JuicyBucks websites.

### B.  Eyegasmic Defendants

Troy Savege (named as Troy Doe), a citizen and resident of Queensland, Australia, is involved in the construction, ownership and content of www.eyegasmic.com.  Eyegasmic Enterprises is an Australian business entity of unknown form and holds the

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

registration for the Internet domain name www.eyegasmic.com.  After failing to return waivers of service of process, these defendants, known collectively as the "Eyegasmic Defendants," were served via private personal service on July 26, 2005.  The Eyegasmic Defendants have not participated in this case since that time and are now in default.

Williams alleges that, as of October 25, 2004, the website www.eyegasmic.com had posted, inter alia, an advertisement to purchase the Sex Tape, which included the hyperlinked text "Allison Williams," allegedly defamatory text similar in content to the JuicyBucks advertisements, and a juxtaposition of Williams's image with an image of an unidentified woman in the Sex Tape.  Hitting any of the hyperlinks redirected the user to Exposed.PaparazziFilth, where the user could purchase the Sex Tape. Williams further alleges that the Eyegasmic Defendants have a "financial arrangement" with the JuicyBucks Defendants, whereby the Eyegasmic Defendants are paid for posting hyperlinks on their websites to the JuicyBucks Websites.

## C. Advertising Sex Defendants

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

Raymond Williams is a resident of Las Vegas, Nevada, and Advertising Sex, LLC, is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada, whose license to operate has been revoked (the "Advertising Sex Defendants"). Williams alleges that the Advertising Sex Defendants hold the registration for the Internet domain names www.icangetyouin.com, www.esexteen.com, www.nude-celebrities-network.com, www.picturemans.com, and www.nude-celebrities-network.org (the "Advertising Sex Websites"). The Advertising Sex Defendants are also listed as the administrative, billing, and technical contacts for the Advertising Sex Websites. Raymond Williams is the principal owner of Advertising Sex, LLC. After he failed to return a waiver of service of process, Williams served Raymond Williams by private personal service on April 9, 2005. Neither he nor Advertising Sex, LLC, however, has appeared in this action and both are in default.

Allison Williams alleges that the Advertising Sex Websites contained defamatory advertisements with hyperlinked text "Allison Williams" that read, in part, "Miss West Virginia gets banged in a truck!" The Advertising Sex Websites also juxtaposed an image of

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND DISMISSING DEFAULT DEFENDANTS FOR LACK OF PERSONAL JURISDICTION

Williams with an unidentified woman in the Sex Tape.  Further, www.nude-celebrities-network.org and www.picturemans.com juxtaposed an image of Williams with a number of images of an unidentified woman from the Sex Tape.  Hitting the hyperlinked text in any of the Advertising Sex Websites, including hyperlinked images from the Sex Tape in www.nude-celebrities-network.org and www.picturemans.com, redirected the user to Exposed.PaparazziFilth, where the user could purchase the Sex Tape.  Williams alleges that the Advertising Sex Defendants have a "financial arrangement" with the JuicyBucks Defendants, whereby the Advertising Sex Defendants are paid for posting hyperlinks on their websites to the JuicyBucks Websites.

### D.  Cain Defendants

Nicholas Cain is a resident of Pennsylvania.  Cain Web Design, Inc., is a Pennsylvania corporation with its principal place of business in Exeter, Pennsylvania.  Cain Web Design is involved in the construction, ownership, and content of www.cameron-diaz-video.com.  Nicholas Cain holds the registration for the Internet domain name www.cameron-diaz-video.com.  After Nicholas Cain and Cain Web Design (the "Cain Defendants") failed to return waivers of

**MEMORANDUM OPINION AND ORDER DENYING**
**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**
**AND DISMISSING DEFAULT DEFENDANTS**
**FOR LACK OF PERSONAL JURISDICTION**

service of process, Williams served them by private personal service on May 13, 2005. They have not participated in this case since that time and are in default.

Williams alleges that, as of October 15, 2004, www.cameron-diaz-video.com contained defamatory advertisements with a hyperlink to purchase access to the Sex Tape under the heading "ALLISON WILLIAMS: Miss West Virginia and TV reporter gets banged in the camera truck!" The website also juxtaposed an image of Williams with a number of images of an unidentified woman from the Sex Tape. Hitting the hyperlinked text that read "Click Here to Access the Full Video Now" redirected the user to Exposed.PaparazziFilth, where the user could purchase the Sex Tape. Further, Williams alleges that the Cain Defendants have a "financial arrangement" with the JuicyBucks Defendants, whereby the Cain Defendants are paid for posting hyperlinks on their websites to the JuicyBucks Websites.

### E.  Mental Shed Defendants

Charlie Hintz ("Hintz") is a resident of Wisconsin. Mental Shed, LLC (d/b/a, inter alia, Sick Twisted Media), is a Wisconsin business entity of unknown form that Hintz operates. Hintz holds

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

the registration for the Internet domain name www.mentalshed.com, and he and Mental Shed, LLC (the "Mental Shed Defendants"), are responsible for the content of www.mentalshed.com.  After failing to return waivers of service of process, the Mental Shed Defendants were served via private personal service on May 17, 2005.  They have not participated in this case since that time and are in default.

Williams alleges that, as of October 18, 2004, www.mentalshed.com contained defamatory advertisements with a hyperlink to purchase access to the Sex Tape under the heading "Miss West Virginia Does Her Hubby And A Toy."  Hitting the hyperlinked text redirected the user to www.juicybucks.com, which lead the user to Exposed.PaparazziFilth, where the user could purchase the Sex Tape.  Williams alleges that the Mental Shed Defendants have a "financial arrangement" with the JuicyBucks Defendants, whereby the Mental Shed Defendants are paid for posting hyperlinks on their websites to the JuicyBucks Websites.

### F.  WebTechin Defendants

Darren M. McLaughlin is a resident of Ohio and serves as the President of Performance Marketing Group, Inc., an Ohio corporation

11

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

with its principal place of business in Beachwood, Ohio (the "WebTechin Defendants").[1]  Performance Marketing Group holds the registration for the Internet domain names www.performancecorporate.com and www.webtechin.com.  The WebTechin Defendants are involved in the construction, ownership, and content of www.webtechin.com.  After McLaughlin failed to return waivers of service of process, Williams served him by private personal service on May 7, 2005.  The WebTechin Defendants have not participated in this case since that time and are in default.

Williams alleges that, as of December 28, 2004, www.webtechin.com contained defamatory advertisements with a hyperlink to purchase access to the Sex Tape under the heading "Naked Allison Williams finds herself embroiled in a sex tape scandal."  The text of the advertisement also read "Naked Allison Williams is a former beauty contest winner who found work as a TV newswoman for a small West Virginia town."  Hitting the hyperlinked text redirected the user to www.juicybucks.com, which leads the user to Exposed.PaparazziFilth, where the user could purchase the

---

[1] Pamela L. McLaughlin was originally included in this suit as the Secretary of Performance Marketing Group, but the parites subsequently settled.

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

Sex Tape.  Williams alleges that the WebTechin Defendants have a "financial arrangement" with the JuicyBucks Defendants, whereby the WebTechin Defendants are paid for posting hyperlinks on their websites to the JuicyBucks Websites.

### G.  Gen0cide Defendants

Scott Rickett is a citizen and resident of Queensland, Australia, and holds the registration for Internet domain name www.insidecelebs.com.  Gen0cide Productions is an Australian business entity of unknown form operated by Scott Rickett that is associated with, and may hold the copyrights to the content on, www.insidecelebs.com, www.gen0cide.com, and www.sickchicks.net. After Rickett and Gen0cide Productions (the "Gen0cide Defendants") failed to return waivers of service of process, Williams served them by private personal service on June 24, 2005.  The Gen0cide Defendants have not participated in this case since that time and are in default.

Williams alleges that, as of December 27, 2004, www.insidecelebs.com contained defamatory advertisements with a hyperlink to purchase access to the Sex Tape under the heading "ALLISON WILLIAMS: Miss West Virginia and TV reporter gets banged

in the camera truck!" The website also displayed five hyperlinked images, represented to be Williams, from the Sex Tape. Hitting the hyperlinks redirected the user to Exposed.PaparazziFilth, where the user could purchase the Sex Tape. Williams alleges that the Gen0cide Defendants have a "financial arrangement" with the JuicyBucks Defendants, whereby the Gen0cide Defendants are paid for posting hyperlinks on their websites to the JuicyBucks Websites.

### H. Tracy Whitewick

Tracy Whitewick (named as Tracy Doe, a/k/a TW, Tracy0101, taw500, celevideo, and tbabe) is a citizen and resident of Ontario, Canada, and holds the registrations for the Internet domain names www.paris-hilton-sex.com, and www.freecelebrities.org (the "Whitewick Websites"). After Whitewick failed to return a waiver of service of process, Williams served Whitewick by private personal service on September 6, 2005. Whitewick has not participated in this case since that time and is in default.

Williams alleges that, as of October 15, 2004, www.freecelebrities.org contained defamatory advertisements with a hyperlink to purchase access to the Sex Tape under the heading "ALLISON WILLIAMS: Miss West Virginia and TV reporter gets banged

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND DISMISSING DEFAULT DEFENDANTS FOR LACK OF PERSONAL JURISDICTION

in the camera truck!"  The website also displayed six hyperlinked images, represented to be Williams, from the Sex Tape.  Hitting the hyperlinked text redirects the user to Exposed.PaparazziFilth, where the user could purchase the Sex Tape.

Williams also alleges that, as of October 15, 2004, www.paris-hilton-sex.com contained defamatory advertisements with a hyperlink to purchase access to the Sex Tape under the heading "Allison Williams: Miss West Virginia and TV reporter gets banged in the news van!"  The website also juxtaposed fifteen images, represented to be Williams, from the Sex Tape.  Hitting the hyperlinked text redirected the user to Exposed.PaparazziFilth, where the user could purchase the Sex Tape.  Williams alleges that Whitewick has a "financial arrangement" with the JuicyBucks Defendants, whereby Whitewick is paid for posting hyperlinks on her websites to the JuicyBucks Websites.

### I.  Manuel Noten

Manuel Noten is a citizen and resident of Groningen, The Netherlands.  He is associated with and may hold copyrights to the content on www.amateurstart.com, www.superbadboy.com, and www.webmastersale.com.  After he failed to return a waiver of

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

service of process, Williams served Noten by private personal service on September 2, 2005. Noten has not participated in this case since that time and is in default.

Williams alleges that, as of October 15, 2004, www.amateurstart.com contained defamatory advertisements to purchase access to the Sex Tape by hyperlinked text that read "Miss West Virginia." Hitting the hyperlink redirected the user to Exposed.PaparazziFilth, where the user could purchase the Sex Tape. Williams alleges that, based on his association with www.amateurstart.com, Noten has a "financial arrangement" with the JuicyBucks Defendants, whereby Noten is paid for posting hyperlinks on www.amateurstart.com to the JuicyBucks Websites.

### J.  Webresultz Defendants

Craig Brown, a citizen and resident of Queensland, Australia, is an officer, director, and sole shareholder of Webresultz Pty. Inc. (the "Webresultz Defendants"), and is involved in the construction, ownership, and content of www.baldbastard.com. Webresultz Pty. Ltd. is an Australia business entity of unknown form, that is registered with the Australian Tax Office and Australian Securities & Investment Commission, and holds the

16

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

registration for the Internet domain name www.baldbastard.com. After they failed to return waivers of service of process, Williams served the Webresultz Defendants by private personal service on June 28, 2005. The Webresultz Defendants have not participated in this case since that time and are in default.

Williams alleges that, as of December 22, 2004, www.baldbastard.com contained defamatory advertisements with a hyperlink to purchase access to the Sex Tape under the heading "ALLISON WILLIAMS: Miss West Virginia and TV reporter gets banged in the camera truck!" Hitting the hyperlinked text redirected the user to Exposed.PaparazziFilth, where the user could purchase the Sex Tape. Williams alleges that, based on a "financial arrangement" with the JuicyBucks Defendants, the Webresultz Defendants are paid for posting hyperlinks on their website to the JuicyBucks Websites.

### K. FrostyLips, LLC

FrostyLips, LLC ("FrostyLips"), is a limited liability company formed in New York, New York, and associated with www.frostylips.com. After FrostyLips failed to return a waiver of service of process, Williams served FrostyLips by private personal

**MEMORANDUM OPINION AND ORDER DENYING**
**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**
**AND DISMISSING DEFAULT DEFENDANTS**
**FOR LACK OF PERSONAL JURISDICTION**

service on May 10, 2005. FrostyLips has not participated in this case since that time and is in default.

Williams alleges that, as of January 26, 2005, www.frostylips.com contained defamatory advertisements with a hyperlink to purchase access to the Sex Tape under the text "Allison Williams Miss West Virginia and TV reporter gets banged in the news truck." Hitting the hyperlinked text redirected the user to Exposed.PaparazziFilth, where the user could purchase the Sex Tape. Williams alleges that, based on a "financial arrangement" with the JuicyBucks Defendants, the owners and/or operators of FrostyLips are paid for posting hyperlinks on their website to the JuicyBucks Websites.


**L.  Henry Rottine**

Henry Rottine is a citizen and resident of The Netherlands and holds the registration for the Internet domain name www.classycelebs.com. Rottine executed a waiver of service of process on March 23, 2005, and has not participated in this case since that time. He is now in default.

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

Williams alleges that, as of January 27, 2004,[2] www.sextapescelebs.com contained defamatory advertisements with a hyperlink to purchase access to the Sex Tape, described as the "Allison Williams Sex Tape" and which stated, "Allison Williams won the title of Miss West Virginia in 2003. What a girl, a sex fiend and a beauty queen, does it get any better?" The website also included a picture of Williams and, below the advertisement's text, three pictures of an unidentified woman from the Sex Tape. Hitting the hyperlinked text "Download Mirror One" or "Download Mirror Two" redirected the user to Exposed.PaparazziFilth, where the user could purchase the Sex Tape. Williams alleges that, based on a "financial arrangement" with the JuicyBucks Defendants, Rottine is paid for posting hyperlinks on www.classycelebs.com to the JuicyBucks Websites.

### M. CelebFlix Defendants

Kenneth M. Boyd and Edith G. Boyd are residents of Florida and are officers and/or directors of PalmBeach-Online, Inc., a Florida corporation with its principal place of business in Jupiter,

---

[2] This date appears in Williams's Complaint at ¶333. Based on the her other allegations, however, the Court questions the accuracy of the year 2004.

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

Florida (the "CelebFlix Defendants"). PalmBeach-Online holds the registration for the Internet domain names www.celebflix.com, www.curiouswhitegirls.com, and www.tgpprofessional.com (the "CelebFlix Websites"). Kenneth Boyd holds the registration for the Internet domain name www.nohiddenfaces.com. Edith Boyd is the administrative contact for that Internet domain name and also holds the registration for the Internet domain name www.22469.com. The CelebFlix Defendants executed waivers of service and are in default.[3]

Williams alleges that, as of October 15, 2004, www.celebflix.com contained defamatory advertisements with a hyperlink to purchase access to the Sex Tape under the heading "Work Sex Tape Allison Williams" in the section entitled, "Bonus Section: Celebrity Home Sex Tapes." Adjacent to the heading was a hyperlinked image of an unidentified woman from the Sex Tape, represented to be Williams, and the hyperlinked text "Miss West

---

[3]   In a separate order (dkt. no. 360), this Court addressed Williams's request that it reconsider its decision determining that the document filed on May 18, 2005 by the CelebFlix Defendants (dkt. no. 77) was not a valid answer. The Court denied that motion based on the fact that the document from the CelebFlix Defendants lacked the written signature required for all pleadings by Civil Rule of Procedure 11(a).

Virginia & TV Reporter Sex in the News Van."  Hitting any of the hyperlinks redirected the user to another CelebFlix website containing the text "Former Miss West Virginia and recently fired TV reporter for WVEC Channel 13 in Norfolk, VA, [sic] Allison Williams has made her way into the CelebFlix Hall of Shame" and five images of the unidentified woman from the Sex Tape.

CelebFlix requires a user to register personal information and to obtain a membership user ID and password in order to view the Sex Tape.  Once registered with one of three entities, CelebFlix members who pay the membership fee of $38.41 per month are able to see portions of the Sex Tape, along with other "Members Only" material.  When registering credit card information, CelebFlix customers enter their billing addresses, including a prompt for a particular state.  West Virginia was one of the states available from a pull-down menu.

Williams also alleges that, as of October 15, 2004, a number of websites, including www.curiouswhitegirls.com and www.nohiddenfaces.com, had stored information so that a search on the Yahoo! Search engine of "'Allison Williams' Miss West Virginia sex" returned a search result to those websites.  Hitting the

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

Yahoo! Search hyperlink for either of these websites redirected the user to www.celebflix.com, where the user could purchase the Sex Tape. Williams alleges that the CelebFlix Defendants orchestrated a large civil conspiracy to defame and otherwise harm her and to profit from the defamatory postings by (1) steering traffic to www.celebflix.com and (2) offering financial incentives and access to free content to other websites willing to promote and reproduce the defamatory postings, and to establish hyperlinks to www.celebflix.com on their websites.

### N.  DJ Sky Defendants

Peter Smallwood (a/k/a DJ Sky, DJ_Sky69, and Retro Rewind) is a citizen and resident of British Columbia, Canada, and operates Purple Sky Productions, a Canadian business entity of unknown form (the "DJ Sky Defendants"). The DJ Sky Defendants are involved in the construction, ownership, and content on the subdomain djsky.pornhost.biz. Smallwood executed a waiver of service of process. After Purple Sky Productions failed to return a waiver of service of process, Williams served Purple Sky Productions by private personal service on January 19, 2006. No DJ Sky Defendants

have participated in this case since that time, however, and all are now in default.

Williams alleges that as, of October 2004, www.djsky.pornhost.biz contained defamatory advertisement for the Sex Tape under the hyperlinked text "Allison Williams Miss West Virginia & WVEC Reporter Got Caught." Hitting the hyperlink redirected the user to an "Allison Williams" page containing forty-eight images of an unidentified woman, represented to be Williams, from the Sex Tape.

### O.   Michael Vacietis

Michael Vacietis is a citizen and resident of Australian Capital Territory, Australia. He is involved in the construction, ownership, and content of http://realityskin.net. After failing to return a waiver of service of process, Williams served Vacietis by private personal service on June 28, 2005. He has not participated in this case since that time and is now in default.

Williams alleges that, as of November 11, 2004, www2.realityskin.net ("RealitySkin") contained a defamatory posting describing the Sex Tape in a RealitySkin forum posting by member "rewn" under the heading "Allison Williams Biography," which read

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

in part: "Allison Williams won the title of Miss West Virginia in 2003.  What a girl, a sex fiend and a beauty queen, does it get any better?"  Williams contends that, in May 2005, premium access to realityskin.com was $5 per month.

## II.  Legal Analysis

### A.  Personal Jurisdiction Based On Internet Activity

Williams asserts that the Court may properly exercise specific jurisdiction over each of the Default Defendants based on their Internet activity alone.  The Court's earlier Order discussed in detail the law applicable to a federal court's exercise of personal jurisdiction over defendants whose contact with the forum state is limited to the Internet.

Traditionally, to determine whether specific personal jurisdiction exists, courts in the Fourth Circuit have considered the following factors:

> (1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable'.

ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)(citations omitted).  When a defendant's contact

with the forum state is limited to the Internet, however, the appropriate inquiry is to determine how much virtual contact is enough to satisfy the traditional due process analysis and justify the exercise of personal jurisdiction over a defendant who has only entered the forum by electronic means. The seminal case for determining whether an electronic contact over the Internet is sufficient to establish personal jurisdiction is <u>Zippo Manufacturing v. Zippo Dot Com</u>, 952 F.Supp. 1119 (W.D. Pa. 1997).

Utilizing a sliding scale model of contacts, the district court in <u>Zippo</u> reasoned that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity an entity conducts over the Internet." <u>Id.</u> at 1124. The Fourth Circuit adopted and adapted <u>Zippo</u>'s sliding scale model of contacts in <u>ALS Scan</u>, holding that, consistent with due process, a state may exercise jurisdiction over a person outside the forum state when that person (1) directs electronic activity into the state, (2) with the manifested intent of engaging in business or other interactions within the state, and (3) that activity creates, in a person within the state, a potential cause of action cognizable in

the state's courts. <u>ALS Scan</u>, 293 F.3d at 714.  This conjunctive, three-factor test is designed to preclude individuals from being amenable to personal jurisdiction solely because they place information on the Internet. <u>Id.</u>  It focuses instead on the traditional minimum contacts doctrine of purposeful availment and an actor's intent to enter the forum state.

In arguing that this Court has personal jurisdiction over the Default Defendants based on their activity on the Internet, Williams relies on a series of cases which are distinguishable for several reasons.  First, Williams cites cases from district courts within this circuit that involve Internet activity, but which were decided before the Fourth Circuit's seminal decision in <u>ALS Scan</u>. These include <u>Bochan v. La Fontaine</u>, 68 F.Supp.2d 692 (E.D. Va. 1999)(finding personal jurisdiction over defendants based on allegedly defamatory postings and advertisements accessed through the Internet by individuals in the forum state); and <u>Telco Commc'ns v. An Apple A Day</u>, 977 F.Supp. 404 (E.D. Va. 1997)(finding personal jurisdiction where defendants conducted advertising and solicitation over the Internet that residents of the forum state could access 24 hours a day.)

## MEMORANDUM OPINION AND ORDER DENYING
## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
## AND DISMISSING DEFAULT DEFENDANTS
## FOR LACK OF PERSONAL JURISDICTION

Second, some cases relied on by Williams involved claims where defendants clearly directed tortious activity into the forum state. For instance, in <u>Verizon Online Services, Inc. v. Ralsky</u>, 203 F. Supp. 2d 601 (E.D. Va. 2002), decided the week before <u>ALS Scan</u>, the district court found that personal jurisdiction existed because the defendant's Internet activity involved sending millions of unsolicited advertisement e-mails through Verizon servers located in the forum state. In <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770 (1984), the United States Supreme Court found personal jurisdiction in a libel action based on the defendant's circulation of magazines containing the libelous material in the forum state. Similarly, in <u>First American First, Inc. v. National Association of Bank Women</u>, 802 F.2d 1511 (4th Cir. 1986), the Fourth Circuit found personal jurisdiction where the defendant had mailed defamatory letters throughout the country, including into the forum state.

Third, Williams's reliance on the case of <u>Graduate Management Admission Council v. Raju</u>, 241 F. Supp. 2d 589 (E.D. Va. 2003), is misplaced. In <u>Raju</u>, the district court actually found that personal jurisdiction could not be established for Internet sales and advertisements under the <u>ALS Scan</u> test because the plaintiff

### MEMORANDUM OPINION AND ORDER DENYING
### PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
### AND DISMISSING DEFAULT DEFENDANTS
### FOR LACK OF PERSONAL JURISDICTION

could not establish that the defendant had directed his activities into Virginia. Id. 593-96. However, the court did find that, under Federal Rule of Civil Procedure 4(k)(2), it was able to exercise personal jurisdiction over the defendant for the federal law claims. Rule 4(k)(2) allows personal jurisdiction for federal law claims where the defendant is served with a summons or files a waiver of service and is not otherwise subject to general jurisdiction in any state. Raju adapted the test in ALS Scan and found jurisdiction for the federal law claims existed because the defendant's website, as a whole, targeted the United States for sale (by selling in United States Dollars) and the defendant had shipped at least some sales to the United States. Raju, 241 F.Supp.2d at 596-00. The adapted test in Raju, however, is not an alternative basis for exercising jurisdiction here because personal jurisdiction under Rule 4(k)(2) can only attach to federal law claims, and this case involves only state law claims.

Finally, some of the cases Williams cites are from other jurisdictions and, thus, are neither controlling nor persuasive since they contradict the Fourth Circuit's decision in ALS Scan. See Archdiocese of St. Louis v. Internet Entm't Group, Inc., 34 F.

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

Supp. 2d 1145 (E.D. Mo. 1999)(finding personal jurisdiction in ordering a preliminary injunction for trademark dilution stemming from Internet addresses). In this vein, Williams focuses particularly on <u>Goldhaber v. Kohlenberg</u>, 928 A.2d 948 (N.J. Super. Ct. App. Div. 2007), where the plaintiff obtained a default judgment against the defendant based on libelous postings on an Internet newsgroup. The plaintiffs in that case were residents of New Jersey who had sued the defendant, a resident of California with no New Jersey contacts, in New Jersey state court. 928 A.2d at 383. New Jersey law allowed jurisdiction to be "posited based upon where the effects of the harassment 'were expected or intended to be felt.'" <u>Id.</u> at 389(<u>quoting</u> <u>Blakey v. Continental Airlines</u>, 751 A.2d 538, 556 (N.J. 2000)). The court's decision, however, recognized that other jurisdictions have found that contacts based on mere postings on an Internet forum are insufficient to establish jurisdiction, and cited, among others, the Fourth Circuit's decision in <u>Young v. New Haven Advocate</u>, 315 F.3d 256 (4th Cir. 2002), which applied the factors from <u>ALS Scan</u>. <u>Goldhaber</u>, 928 A.2d at 387-88.

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

Finally, Williams urges the Court to apply the "effects" test from <u>Calder v. Jones</u>, 465 U.S. 783 (1984)(finding personal jurisdiction over an out-of-state writer based on the "effects" his defamatory article about an individual in the forum state published in a national magazine with its largest circulation in the forum state).[4]   Under that test, however, a defendant must still expressly aim or direct the allegedly wrongful activity into the forum state so as to "reasonably anticipate being haled into court there."   <u>Id.</u> at 798-90; <u>See</u> <u>Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Lt. P'ship</u>, 34 F.3d 410 (7th Cir. 1994)(exercising personal jurisdiction over an out of state defendant in a trademark dispute where broadcasts of games into the forum state were already arranged and where the sale of merchandise across the country and in the forum state was imminent).

The three factor test for personal jurisdiction based only on Internet activity in <u>ALS Scan</u> directly addressed the <u>Calder</u>

---

[4] The Fourth Circuit has noted that the "effects" test "is typically construed to require that the plaintiff establish that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to the be focal point of the tortious activity." <u>Carefirst</u>, 334 F.3d at 398 n. 7 (citations omitted).

"effects" test. <u>ALS Scan</u>, 293 F.3d at 714. Thus, although Williams seeks relief in West Virginia, the state in which she resides, and where she felt the brunt - or effects - of the alleged defamation, and while West Virginia may have a strong interest in adjudicating allegations that one of its residents has been defamed, the controlling issue is whether, based on their alleged Internet activity, the Default Defendants could have reasonably anticipated being haled into court in West Virginia. <u>Carefirst</u>, 334 F.3d at 401. An individual will only be subject to personal jurisdiction pursuant to the test articulated in <u>ALS Scan</u> if there is manifest evidence that he both intended to enter a state and also actually did so. 293 F.3d at 714; <u>Carefirst</u>, 334 F.3d at 399-02.

### B.  Application to Default Defendants

To determine whether any Default Defendant is subject to specific personal jurisdiction in West Virginia, the key question is whether there is sufficient evidence in the record to satisfy the first factor of <u>ALS Scan</u>, that is, whether any defendant has directed electronic activity into the State. Only if Williams can satisfy this factor need the Court determine whether that defendant

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

directed any such electronic activity into West Virginia with the manifest intent of engaging in business or other interactions within the State. The Zippo interactivity analysis weighs heavily in determining whether any of the Default Defendants directed electronic activity into West Virginia.

### 1. JuicyBucks Defendants and Tracy Whitewick

The JuicyBucks Websites all directed users interested in purchasing the Sex Tape to Exposed.ParparazziFilth, which was set up for users to register, pay money, and download files, including the Sex Tape. Under the Zippo sliding scale analysis, this level of interaction clearly falls at the commercial end of the spectrum, where personal jurisdiction is proper if the defendant enters into contracts with residents of this jurisdiction that involve knowingly and repeatedly transmitting files over the Internet into this jurisdiction. Id. at 1124. Williams, however, has not demonstrated that any contracts were entered into through the JuicyBucks Websites with any Internet user in West Virginia.

The Whitewick Websites, by contrast, contained hyperlinks that a user could click on and be redirected to the JuicyBucks Websites. Under the Zippo sliding scale analysis, this level of interaction

may go beyond that of a purely passive website that merely makes information available on the Internet. The websites, however, do not fall at the commercial end of the <u>Zippo</u> spectrum because Whitewick did not conduct business or enter into contracts with users through the websites. They, therefore, arguably fall within the intermediate area of the <u>Zippo</u> sliding scale, where personal jurisdiction is neither presumptively granted nor denied. As a consequence, it is necessary to examine the level of activity on both the JuicyBucks Websites and the Whitewick Websites in order to determine if these defendants actually directed electronic activity into West Virginia. <u>Carefirst</u>, 334 F.3d at 399.

Williams has submitted affidavits and copies of e-mail correspondence establishing that West Virginia residents accessed both the JuicyBucks and Whitewick websites in West Virginia. She also must show, however, that the JuicyBucks Defendants and Whitewick "directed" the electronic activity of their websites into West Virginia. <u>ALS Scan</u>, 293 F.3d at 714. Williams argues that, by using her title of Miss West Virginia in advertising the Sex Tape, these defendants entered the West Virginia market, availed themselves of the privilege of conducting business in West

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

Virginia, and fashioned their websites with a local West Virginia character. Moreover, she contends that the JuicyBucks Defendants entered West Virginia by allowing users to pay for website membership by credit card, which required the user to chose his or her state from a drop-down menu that included West Virginia.

The argument that the use of a state's name establishes purposeful availment and, without other indicators, gives a website a local character is unavailing. The appropriate question is whether a website "directed" internet activity into a particular state, and pertinent to that analysis is whether the *overall content* of a website has a strongly local character. See Carefirst, 334 F.3d at 401.

The overall content of a website must look to the entire website, and not merely the use of a state's name. For instance, in Carefirst, in finding that a website did not "direct" itself into Maryland, the Fourth Circuit found that the defendant non-profit organization's website had a strong local character relating to Chicago based on the fact that all of its offers of assistance, locations of operations, and program presentation sites were advertised as being in the Chicago area. Id. at 401. Those facts,

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

however, did not give the website a strong local character of the forum state (Maryland), given that the only way the website reached out to Maryland was by a general request for Internet users from anywhere to make a donation.  <u>Id.</u>  Unfortunately, here, Williams has failed to show that the JuicyBucks and Whitewick websites are anything other than generally accessible websites offering sales or posting advertisements to anyone in the United States and the Internet world.

In <u>ESAB Group, Inc. v. Centricut, Inc.</u>, 126 F. 3d 617, 625-26 (4th Cir. 1997), the Fourth Circuit addressed whether personal jurisdiction could be asserted over a business that offered sales generally in the United States who had customers in the forum state.  In <u>ESAB Group</u>, the plaintiff, a South Carolina company, alleged that a former non-South Carolina employee and a New Hampshire company conspired to take sales leads and trade secrets from it.  <u>Id.</u> at 621.  The New Hampshire defendant arguably was in competition with the plaintiff and conducted its entire business through the mail with no offices or representatives in South Carolina.  <u>Id.</u>  The plaintiff sued the defendants in federal court in South Carolina, arguing that the court had both general and

## MEMORANDUM OPINION AND ORDER DENYING
## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
## AND DISMISSING DEFAULT DEFENDANTS
## FOR LACK OF PERSONAL JURISDICTION

personal jurisdiction over them. The district court denied the defendants' motion to dismiss for lack of personal jurisdiction, but granted leave to the defendants to file an interlocutory appeal. <u>Id.</u> at 621-22.

On appeal, the Fourth Circuit held that, even though the New Hampshire defendant had twenty-six customers in South Carolina, general jurisdiction could not be established because the company had no sales representatives or other agents in the state, all the customers were mail order customers, the company offered no services in the state, and the company's South Carolina sales constituted less than one-tenth of one percent of its nationwide sales. <u>ESAB Group</u>, 126 F.3d at 624. The court also concluded that the plaintiff could not establish specific jurisdiction because the only "contact" with South Carolina was the fact that a sale from a stolen lead would be felt by the plaintiff there. <u>Id.</u> at 625. Standing alone, such activity did "not support proof of an intent by [the defendant company] to avail itself of the privilege of conducting activities in South Carolina." <u>Id.</u> Such activities by the company were generally focused on the entire United States and

Canada, and did not show an intentional targeting or focusing on South Carolina such that the company had "entered" South Carolina.

The Fourth Circuit also rejected the plaintiff's argument that, wherever the sales were made, the district court still had personal jurisdiction because the plaintiff felt the loss of those sales in South Carolina at its headquarters. "While this is undoubtedly true," the court noted, "it is ultimately too unfocused to justify personal jurisdiction." Id. The court also noted that agreeing with the plaintiff's argument would make jurisdiction hinge on the plaintiff's choice of residence instead of on the defendant's purposeful availment or expressly aimed activities. Id. at 625-26. The defendants' contacts, therefore, were "too attenuated and insubstantial" for the district court to exercise personal jurisdiction over them.[5] Id. at 626.

---

[5] In ESAB Group, the Fourth Circuit went on to find that the exercise of personal jurisdiction over the defendants was proper for the plaintiff's federal law claims and, based on pendant jurisdiction, the court could then exercise jurisdiction over them as to the plaintiff's state law claims. 126 F.3d at 626-29. As has already been noted earlier in this Memorandum Opinion, this Court need not address such an alternative basis for personal jurisdiction because no federal law claims are at issue in this case.

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

The JuicyBucks and Whitewick websites are accessible to anyone throughout the United States and the Internet world.  Under the holding in <u>ESAB Group</u>, this, without more, does not establish an intentional targeting of or focusing on West Virginia.  Therefore, to allow personal jurisdiction over a defendant in a plaintiff's resident state based on sales from anywhere in the world would make jurisdiction dependent on the plaintiff's choice of residence and not on the traditional minimum contacts doctrine of purposeful availment.  Without more, under Fourth Circuit precedent, such generally accessible websites do not "direct" internet activity into a particular state in a manner that satisfies the requirements for personal jurisdiction.  <u>Carefirst</u>, 334 F.3d at 400-01; <u>ESAB Group</u>, 126 F. 3d at 625-26.  The Court, therefore, concludes that the JuicyBucks Defendants and Tracy Whitewick lack sufficient minimum contacts with the state to justify being haled into court here.[6]

**2.  Defendants with Intermediate Internet Activity**

---

[6] Pursuant to <u>ALS Scan</u>, because Williams has failed to establish that these defendants actually "directed" the allegedly defamatory electronic activity into West Virginia, the Court need not determine whether the defendants had a manifest intent to engage in business or other interactions within the State.  The same consideration applies to the remaining Default Defendants.

### MEMORANDUM OPINION AND ORDER DENYING
### PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
### AND DISMISSING DEFAULT DEFENDANTS
### FOR LACK OF PERSONAL JURISDICTION

The Eyegasmic Defendants, Advertising Sex Defendants, Cain Defendants, Mental Shed Defendants, WebTechin Defendants, Gen0cide Defendants, Manuel Noten, Webresultz Defendants, FrostyLips, and Henry Rottine all allegedly posted defamatory hyperlink advertisements on their respective websites on which a user could click and be redirected to the JuicyBucks Websites where the Sex Tape was for sale. Under the Zippo sliding scale analysis, this level of interaction may go beyond that of a purely passive website that merely makes information available on the Internet. Such websites, however, do not fall at the commercial end of the Zippo spectrum because these defendants did not conduct business or enter into contracts with users through their websites. They, therefore, arguably fall within the intermediate area of the Zippo sliding scale, where personal jurisdiction is neither presumptively granted nor denied. As a consequence, the Court must examine the level of activity on these websites in order to determine if these defendants actually directed electronic activity into West Virginia. Carefirst, 334 F.3d at 399.

Williams has failed to provide evidence of any actual contact between West Virginia users of the Internet and these defendants'

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

websites.  Since these websites arguably were more than passive websites, the absence of actual contacts with West Virginia dooms any argument that this Court may exercise personal jurisdiction over these defendants based solely on their websites' electronic activity.  The Court therefore concludes that, because the Eyegasmic Defendants, Advertising Sex Defendants, Cain Defendants, Mental Shed Defendants, WebTechin Defendants, Gen0cide Defendants, Manuel Noten, Webresultz Defendants, FrostyLips, and Henry Rottine did not direct electronic activity into West Virginia, they lack sufficient minimum contacts with the state to justify being haled into court here.

### 3.  CelebFlix Defendants and Michael Vacietis

The CelebFlix Defendants operate websites that advertise and allow users to register, pay money, and download files, including portions of the Sex Tape.  Under the Zippo sliding scale analysis, this level of interaction clearly falls on the commercial end of the spectrum where personal jurisdiction is proper if the defendant enters into contracts with residents of this jurisdiction that involve knowingly and repeatedly transmitting files over the Internet into this jurisdiction.  Id. at 1124.  Micheal Vacietis

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

operates a website where users pay money for premium access and can post and reply to comments from other users.  This level of activity goes beyond the purely passive website that merely makes information available on the Internet and falls within the intermediate area of the <u>Zippo</u> sliding scale, where personal jurisdiction is neither presumptively granted nor denied.  As a consequence, the Court must examine the level of activity on both these defendants' websites in order to determine if these defendants actually directed electronic activity into West Virginia.  <u>Carefirst</u>, 334 F.3d at 399.

Williams has failed to provide evidence of actual contact between West Virginia users of the Internet and either the CelebFlix websites or the Vacietis website.  Since these websites were more than passive websites, the absence of actual contacts with West Virginia dooms any argument that this Court may exercise personal jurisdiction over these defendants solely because of their websites' electronic activity.  The Court therefore concludes that the CelebFlix Defendants and Michael Vacietis did not direct electronic activity into West Virginia and lack sufficient minimum contacts with the state to justify being haled into court here.

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

### 4.  DJ Sky Defendants

The DJ Sky website, www.djsky.pornhost.com, contained a hyperlink that a user could click on and be redirected to an "Allison Williams" page containing forty-eight images, represented to be Williams, from the Sex Tape.  Under the <u>Zippo</u> sliding scale analysis, this level of interaction represents the purely passive website that merely makes information available on the Internet where personal jurisdiction may be presumptively denied.  Williams has failed to provide evidence of actual contact between West Virginia users of the Internet and the DJ Sky website.  Given that the website is a passive website, coupled with the absence of actual contacts with West Virginia, this Court cannot exercise personal jurisdiction over the DJ Sky Defendants solely because of the website's electronic activity.  The Court therefore concludes that the DJ Sky Defendants did not direct electronic activity into West Virginia and lack sufficient minimum contacts with the state to justify being haled into court here.

### III.  Conclusion

Under Fourth Circuit case law, the central jurisdictional inquiry in the Internet domain is purposeful availment.  Pursuant

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

to this analysis, because the plaintiff, Allison Williams, has failed to establish a <u>prima</u> <u>facie</u> case that any of the Default Defendants purposefully availed themselves of contacts in West Virginia, the Court concludes that it would offend notions of fair play and substantial justice to hail them into court here. Therefore, it **DENIES** Williams's motion for default judgment and **ORDERS** that the following defendants are **DISMISSED** from this case for lack of personal jurisdiction: (1) Defendants Web Traffic, Inc.; (2) Scott Moles; (3) Zorg Enterprises; (4) Chris Buckley; (5) Troy Savege; (6) Eyegasmic Enterprises; (7) Raymond Williams; (8) Advertising Sex, LLC; (9) Nicholas Cain; (10) Cain Web Design Inc.; (11) Charlie Hintz; (12) Mental Shed, LLC; (13) Darren McLaughlin; (14) Performance Marketing Group, Inc.; (15) Scott Rickett; (16) Gen0cide Productions; (17) Tracy Whitewick; (18) Manuel Noten; (19) Craig Brown; (20) Webresultz Pty. Ltd.; (21) FrostyLips, LLC; (22) Henry Rottine; (23) Kenneth M. Boyd; (24) Edith G. Boyd; (25) PalmBeach-Online.com, Inc.; (26) Peter Smallwood; (27) Purple Sky Productions; and (28) Michael Vacietis.

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND DISMISSING DEFAULT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

The Court **DIRECTS** the Clerk to transmit copies of this Order

to counsel of record and all <u>pro</u> <u>se</u> parties.

DATED: October 3, 2008.


<u>/s/ Irene M. Keeley</u>
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE