IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


ALLISON WILLIAMS,

        Plaintiff,

v.                          //    CIVIL ACTION NO. 1:05CV51
                                     (Judge Keeley)

ADVERTISING SEX LLC, ET AL,

        Defendants.


                    MEMORANDUM OPINION AND ORDER

    On October 20, 2008, pursuant to Federal Rule of Civil
Procedure 59(e), the plaintiff, Allison Williams ("Williams"),
moved this Court to alter or amend its Order dated October 3, 2008
dismissing a number of defendants for lack of personal
jurisdiction. Williams's motion argues that the Court applied an
incorrect legal standard in determining whether it could exercise
personal jurisdiction over those defendants. Alternatively,
Williams argues that the Court should deem its Order of October 3,
2008 a final judgment pursuant to Federal Rule of Civil Procedure
54(b), thus permitting her to immediately appeal the jurisdictional
decision to the United States Court of Appeals for the Fourth
Circuit.

    For the following reasons, the Court **DENIES** the motion to
alter or amend its judgment (dkt. no. 363), **DENIES** Williams's
motion for oral argument on the motion (dkt. no. 371), and enters

final judgment pursuant to Federal Rule of Civil Procedure 54(b), dismissing the Default Defendants for lack of personal jurisdiction.

## I.  Procedure and Factual Background

Previous Orders have discussed the factual background of this case in detail. Here, the Court notes only that, in general, Williams filed her Complaint against a number of foreign and domestic defendants alleging defamation because the defendants' websites advertised the sale of a pornographic video (the "Sex Tape") in which they identified Williams as the woman depicted in the Sex Tape.

In a Memorandum Opinion and Order entered on August 31, 2007, the Court discussed the standard for exercising personal jurisdiction over a defendant based solely on Internet activity, and dismissed one of the defendants in the case, Joseph Vitagliano ("Vitagliano"), after concluding that, based on the nature of his alleged Internet activity, it could not exercise personal jurisdiction over him.  Later, on May 30, 2008, after securing defaults against a number of other defendants in the case (collectively the "Default Defendants"), Williams moved for default judgment against them.  Thereafter, in an Order dated October 3, 2008, the Court dismissed the Default Defendants after concluding

that it lacked personal jurisdiction over them.  Applying the same analysis employed earlier in Vitagliano's case, the Court concluded that it could not exercise personal jurisdiction over the Default Defendants because their alleged Internet activity did not establish the requisite purposeful minimum contacts to satisfy due process.

Following entry of that Order, pursuant to Federal Rule of Civil Procedure 59(e), on October 20, 2008, Williams moved to alter or amend the Order.  Her motion contends that the Court's Order creates a manifest injustice and misapplies the law.

## II.  Statement of the Law

A district court may grant a motion filed pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend an earlier judgment for three reasons: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998).  Reconsideration of an entered judgment, however, is an extraordinary remedy that should be used sparingly and cannot be used to make new arguments or to argue the case under a novel legal theory that could have been raised before entry of the judgment. Id.

MEMORANDUM OPINION AND ORDER

### III.  Analysis

**A.   Standard for Personal Jurisdiction Over Default Defendants**

In considering the issue of personal jurisdiction without conducting an evidentiary hearing,[1] "the plaintiff need only make a _prima_ _facie_ showing of personal jurisdiction" and "the court must take all disputed facts and reasonable inferences in favor of the plaintiff."  _Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc._, 334 F.3d 390, 396 (4th Cir. 2003).  This, however, does not mean that a court must adopt the plaintiff's legal conclusions that the alleged facts meet jurisdictional requirements; it is the province of the court to determine whether, as a matter of law, personal jurisdiction exists.

Moreover, a federal court's exercise of personal jurisdiction is limited by the long-arm statute of the forum state.  See Fed.R.Civ.P. 4(e).  In this case, West Virginia's long-arm statute,

_____

[1]   In her motion, Williams contends she had no access to jurisdictional discovery over the Default Defendants, and that the Court made its determination without such discovery.  Although she requested such discovery for defendant Vitagliano, Williams never sought jurisdictional discovery for the Default Defendants.  In fact, she made a preliminary showing of personal jurisdiction for defendant Vitagliano in order to obtain jurisdictional discovery concerning his website, which she conceded was not at the commercial end of the _Zippo_ sliding scale.  Regarding the Default Defendants' websites, however, she has always contended that they are "clearly" commercial, and apparently believed that contention obviated any need for jurisdictional discovery.

W.Va. Code § 56-3-33, is co-extensive with the limits of due process under the United States Constitution. <u>Touchstone Research Lab, LTD. v. Anchor Equipment Sales, Inc.</u>, 294 Supp.2d 823, 827 (N.D.W. Va 2003). Accordingly, to determine whether personal jurisdiction is proper, the Court need only analyze whether the exercise of personal jurisdiction over a defendant comports with due process.

As detailed in this Court's previous Orders, the Fourth Circuit considers three factors when determining whether specific personal jurisdiction exists. Those factors include:

> (1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable'.

<u>ALS Scan, Inc. v. Digital Service Consultants, Inc.</u>, 293 F.3d 707, 712 (4th Cir. 2002)(citations omitted). When a defendant's contact with the forum state is limited to the Internet, however, one of the difficulties a court confronts is determining what amount or type of Internet activity satisfies the jurisdictional requirement that the defendant's action be purposefully directed at the State. <u>Id.</u> at 713 (<u>citing</u> <u>Helicopteros v. Hall</u>, 466 U.S. 408, 414 & n.8 (1984).

To address that difficulty, the Fourth Circuit's decision in ALS Scan adopted and adapted the sliding scale model of Internet contacts originally articulated in Zippo Manufacturing v. Zippo Dot Com, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997)("[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity an entity conducts over the Internet."). ALS Scan, 293 F.3d at 713-14. ALS Scan held that, consistent with due process, a state may exercise jurisdiction over a person outside the forum state based on Internet activity "when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." Id. at 714.

In earlier orders in this case, relying on Fourth Circuit precedent, the Court concluded that an individual is only subject to personal jurisdiction under the test announced in ALS Scan where there is manifest evidence that he both intended to enter a state and also actually did so. See ALS Scan, 293 F.3d at 714; and Carefirst, 334 F.3d at 399-02.

### B.  Williams's Arguments

Williams argues that the Court's Order of October 3, 2008 applied an erroneous standard of law and created a manifest injustice.  Although she has presented new authority (see dkt. no. 364), Williams does not argue that there has been an intervening change in the controlling law; nor does she present any newly discovered or previously unavailable evidence.

What Williams does contend is that the appropriate standard to establish personal jurisdiction in a tort case such as this is the target-based analysis found in the Calder "effects" test. She finds the test in ALS Scan too technology-based and urges its confinement to cases such as contract and trademark disputes. She relies on recent case law and articles to advance her argument, characterizing them as shifting the analysis in tort cases arising from Internet activity away from the technical Zippo factors. Williams also asserts that the single publication doctrine allows her to maintain her action in this Court against all the defendants who conspired to defame her. She argues that requiring her to simultaneously prosecute multiple actions in multiple jurisdictions would be "an absurd result."

Even if ALS Scan provides the correct test, Williams contends that she has made a prima facie showing of personal jurisdiction

7

under its requirements.  She alleges that (1) some of the Default Defendants' websites were viewed by people in West Virginia; (2) all the websites are commercial in nature because they advertised and offered to sell the Sex Tape; and (3) the websites defamed her by stating that she, a former Miss West Virginia, is the unidentified woman in the Sex Tape.  She further asserts that the requirement of actual contacts imposed a standard greater than a prima facie showing of personal jurisdiction.

The Court will address each of these arguments in turn.

**i.  The Calder "Effects" Test**

At the outset, it is worth noting that her argument to discard the ALS Scan test of purposeful minimum contacts in favor of an exclusive Calder "effects" test puts Williams in conflict with her previous arguments in this case.[2]  Hence, to the extent she is now

---

[2]  Williams's bench brief in support of her motion for default judgment (dkt. no. 326), for example, discussed the technological aspects of an Internet case such as this before laying out the applicability of Zippo and ALS Scan, and argued that the Court could exercise personal jurisdiction over the Default Defendants based on their Internet activity.  That brief also developed her argument that the Default Defendants' websites satisfy the first and second prongs of the test in ALS Scan because they were directed at West Virginia.

Williams's prior discussion of the Calder "effects" test, moreover, arose within the context of ALS Scan, where she noted that ALS Scan explicitly adopts the precepts of an effects-based test.  In fact, until the filing of her notice of new authority, Williams had never cited to nor argued a case expressly rejecting a minimum contacts analysis in favor of an independently-based

attempting to raise a contrary argument under Rule 59(e), it is inappropriate.  See Pac. Ins. Co., 148 F.3d at 403.  On the other hand, if her argument is that this Court misapplied the Calder "effects" test, she is mistaken.

Williams's notice of new authority directs the Court to three cases from the Eleventh Circuit, two of which she asserts support application of the Calder "effects" test rather than the "contracts-oriented 'minimum contacts' test" in an intentional tort case.  See Licciardello v. Lovelady, 2008 WL 4531668, *4 (11th Cir. Oct. 10, 2008); and Guevara v. Republica del Peru, 2008 WL 4666200, *5 (S.D. Fla. Oct. 21, 2008).  To the extent these cases are from a circuit other than the Fourth Circuit, however, they do not control the outcome here.  Furthermore, to the extent their holdings conflict with relevant authority in the Fourth Circuit, the Court is bound to follow Fourth Circuit precedent.

While the two cases Williams cites support her assertion that the mere "commission of the tort [in the forum state] is sufficient to establish the necessary minimum contacts to assert personal jurisdiction," see, e.g., Guevera, 2008 WL 4666200 at *5, they do so by reading the Calder "effects" test to require "the commission of an intentional tort, expressly aimed at a specific individual in

Calder "effects" test.

the forum state whose effects were suffered in the forum."
<u>Licciardello</u>, 2008 WL 4531668 at *5. That reading clearly
conflicts with relevant caselaw in the Fourth Circuit.

In <u>Young v. New Haven Advocate</u>, 315 F.3d 256 (4th Cir. 2002),
for example, the Fourth Circuit rejected the plaintiff's argument
that the <u>Calder</u> "effects" test required a finding of personal
jurisdiction in his home state merely because the defendant
knowingly posted defamatory statements on a website accessible to
residents in the forum state, and because it knew that the
plaintiff would feel the effects of those defamatory statements in
the forum state where he lived and worked. <u>Id.</u> at 262. Disputing
that <u>Calder</u>'s holding was so broad, the Fourth Circuit stated:

> Although the place that the plaintiff feels
> the alleged injury is plainly relevant to the
> [jurisdictional] inquiry, it must ultimately
> be accompanied by the defendant's own
> [sufficient minimum] contacts with the state
> if jurisdiction . . . is to be upheld."

<u>Id.</u> at 262 (<u>quoting</u> <u>ESAB Group, Inc. v. Centricut, Inc.</u>, 126 F.3d
617, 625-26 (4th Cir. 1997)).

<u>Young</u> also clarified that the "application of <u>Calder</u> in the
Internet context requires proof that the out-of-state defendant's
Internet activity is expressly targeted at or directed to the forum
state." 315 F.3d at 262-63 (<u>citing</u> <u>ALS Scan</u>, 293 F.3d at 714). In
light of this clear precedent, the Court declines Williams's

invitation to adopt the broader application of the <u>Calder</u> "effects" test found in <u>Licciardello</u> and <u>Guevera</u>.

The third case cited by Williams in her notice of new authority, <u>Foreign Imported Prod. and Pub., Inc. v. Grupo Ind. Hotelero, S.A.</u>, 2008 WL 4724495 (S.D. Fl. Oct. 24, 2008), also fails to support her argument. In <u>Foreign Imported</u>, the plaintiff alleged copyright infringement based on pictures posted on the defendants' website advertising their nightclub. <u>Id.</u> at *2. The court examined the website under <u>Zippo</u> and concluded that it was commercial in nature and qualified as an interactive website. <u>Id.</u> at *9. Importantly, that conclusion did not end the inquiry. The court continued by asking whether the defendants had purposefully availed themselves of the privilege of conducting business within Florida. <u>Id.</u>

To answer that question, it employed a "website plus" analysis. <u>Id.</u> It first examined the contents of the website, which was in English, had an American flag and portrayed numerous United States celebrities. <u>Id.</u> at 10. It then looked to the defendants' other activities in Florida, which included advertising with travel agents and tour operators, as well as attending a number trade shows in the state, and concluded, based on its "website plus" analysis and not any exclusive "effects" test, that

11

the defendants' purposeful decision to market and promote its nightclub to Florida citizens, and also to attend trade shows in the state, elevated their contacts from foreseeable to deliberate, such that they reasonably should have expected to be haled into court in Florida.  Id. at *10-11.

### ii. From Technology-based to Target-based Analysis

Williams also argues for an exclusive application of the Calder "effects" test based on public policy.  She claims that law review and journal articles, as well as recent caselaw, acknowledge that a target-based analysis is a more appropriate approach to Internet jurisdictional issues than the technology-specific and ill-fitting ALS Scan and Zippo tests.  In support of her argument, she relies on a recent denial of certiorari by the Supreme Court of the United States in Steinbuch v. Cutler, 2008 WL 2753143 (October 6, 2008), and also on a law review article authored by Michael Geist, Is There A There There? Toward Greater Certainty For Internet Jurisdiction, 16 Berkeley Tech. L.J. 1345 (2001).

Contrary to Williams's characterization, Steinbuch, which is a case from the Eight Circuit, did not involve internet defamation but rather alleged invasion of privacy and intentional infliction of emotional distress for publications in a book.  See Steinbuch v. Cutler, 518 F.3d 580, 583 (8th Cir. 2008).  The Eighth Circuit

12

rejected the plaintiff's argument that specific personal jurisdiction existed, noting that the plaintiff had to show the defendant knew "'the brunt of the injury would be felt by [him] in the State in which [he] lives and works' and intentionally targeted the forum state." Id. at 586 (citing Calder, 465 U.S. at 789-90))(emphasis added). Such a showing, the court surmised, would have been "unlikely", given that the plaintiff had only moved to Arkansas near the time of the book's publication.[3] Id.

Consistent with this Court's own analysis under ALS Scan, in Steinbuch the Eighth Circuit indicated that Calder requires more than the mere allegation of a personal tort; indeed, there must be some evidence that a defendant intentionally targeted the forum state. Id. That requirement strongly resembles the requirements

---

[3] Steinbuch concluded that the plaintiff had failed to meet this burden because (1) he had not asserted he resided in Arkansas at the time the defendant published the book, and (2) his cause of action appeared to have no connection with the forum state and did not arise out of or relate to the defendant's activities in Arkansas. 518 F.3d at 586-87. In that context, and in light of the district court's denial of the plaintiff's request for discovery, the Eighth Circuit remanded the plaintiff's claim for an opportunity to engage in jurisdictional discovery about whether the defendant had been actively involved in marketing the book in Arkansas. Id. at 589.

Unlike the plaintiff in Steinbuch, Williams never sought jurisdictional discovery regarding the Default Defendants. In its place, she filed a brief asserting she had proved a prima facie case against the Default Defendants and never requested jurisdictional discovery as an alternative remedy to dismissal.

under <u>ALS Scan</u> for an Internet defamation suit.  <u>See</u> <u>Young</u>, 315 F.3d at 258 (asking under the <u>ALS Scan</u> test whether the defamatory websites manifested an intent to target Virginia residents). Williams's argument that recent case law indicates a shift away from the <u>ALS Scan</u>, thus, is unpersuasive.

On the other hand, the Geist article on which Williams relies does examine the drawbacks of the <u>Zippo</u> analysis when applied to Internet defamation cases and argues that an alternative target-based approach is not a novel idea.  Geist, <u>supra</u>, at 1353-1370. It proposes that courts should determine whether a website has targeted a forum by analyzing the issue of foreseeability in relation to three factors: contracts, technology, and actual or implied knowledge, with no single factor being determinative. Geist, <u>supra</u>, at 1386.

Geist cites a decision from the District of Maryland, <u>American Information Corp. v. American Infometrics, Inc.</u>, 139 F. Supp. 2d 696 (D. Md. 2001) (Motz, J.), that made targeting central to its jurisdictional analysis. He approvingly notes that case's conclusion that

> Fourth Circuit cases on minimum contacts supported the view that the [defendant's] website did not create jurisdiction in [the forum state].  A company's sales activities focusing 'generally on customers located throughout the United States and Canada

> without focusing on and targeting' the forum
> state did not yield personal jurisdiction. A
> web presence that permits no more than basic
> inquiries from [forum state] customers that
> has never yielded an actual inquiry from a
> [forum state customer], and that does not
> target [the forum state] in any way,
> similarly, should not yield personal
> jurisdiction.

Geist, <u>supra</u>, at 1382 (<u>citing</u> <u>American Information</u>, 139 F. Supp. 2d at 700).

Notably, Geist authored his article a year before the Fourth Circuit decided <u>ALS Scan</u>. Moreover, <u>ALS Scan</u> incorporates the target-based analysis discussed in <u>American Information</u> in its first prong, which requires a court to determine whether a defendant has directed electronic activity into the forum state. The fact that <u>ALS Scan</u> incorporated a target-based approach undercuts Williams's argument that <u>ALS Scan</u> is too technology-based, and this Court sees no need to adopt an entirely new test.

### iii. The Single Publication Rule

Pursuant to the single publication rule, a plaintiff may recover all damages for a defendant's libelous activities or actions, both inside and outside the forum state, in one proceeding in the forum state. <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 777-78 (1984). The single publication rule, however, does not relieve a court of the separate, and logically preceding,

requirement that it have personal jurisdiction over the defendant. For instance, before it applied the single publication rule in <u>Keeton</u>, the United States Supreme Court determined that all of the requisite minimum contacts existed to establish personal jurisdiction, and agreed with the lower court that "[t]he general course of conduct in circulating magazines throughout the state was purposefully directed at New Hampshire" and could not be considered random, fortuitous or isolated.  <u>Id.</u> at 774-75.  Given the facts here, Williams's argument that the single publication rule obviates the Court's jurisdictional analysis is not well-founded.

### iv. Specter of Multiple Actions, Lack of Remedy, and Fear of Redress for Internet Defamation

Williams contends that the result this Court has reached in her case would require her to prosecute multiple actions in multiple jurisdictions against the defendants, and would leave almost all victims of Internet defamation bereft of a remedy.  She argues that West Virginia, the place where she resides, is the only appropriate forum in which to resolve all of her disputes against all of the defendants in one proceeding.  Moreover, she asserts that these defendants ought to fear redress for their defamatory actions in West Virginia, her place of residence.

As the analysis in <u>Keeton</u> highlights, however, Williams's residence is not a separate factor to consider in the

jurisdictional analysis, and she may only bring her defamation action "in any forum with <u>which the defendant has 'certain minimum contacts'</u> . . . ." 465 U.S. at 780-81 (citations omitted)(emphasis added). Thus, while perhaps not an ideal result, Williams nevertheless may bring her suit against the Default Defendants in any forum able to exercise jurisdiction over them. Unfortunately, her desire to litigate her dispute against all defendants in one action does not determine jurisdiction, and she cites no caselaw in support of this argument. Until Williams can establish that the Default Defendants purposefully directed their website activity into West Virginia, thereby satisfying the requisite purposeful minimum contacts requirement of <u>ALS Scan</u>, this Court cannot exercise personal jurisdiction over them.

   **v.   Objection to Showing Actual Contacts Under <u>ALS Scan</u>**

   Having rejected both her reading of the <u>Calder</u> "effects" test and also her policy arguments, the Court turns next to Williams's remaining objection that, under <u>ALS Scan</u>, it erroneously required her to show actual contacts with the Default Defendants' websites.

   Earlier, the Court dismissed another defendant, Joseph Vitagliano, in part because Williams had failed to show that any person in West Virginia had contact with his website. In doing so, it observed that an individual is only subject to personal

jurisdiction under <u>ALS Scan</u> if he manifestly evinces his intent to enter a state and also actually does so. This requirement reasonably stems from the fact that, if there is no alleged contact between residents of the forum state and a defendant's website, it is impossible for a defendant to have "directed" electronic activity into the state as required under the first factor of <u>ALS Scan</u>. Pursuant to that reasoning, the Court's October 3, 2008 Order dismissed those Default Defendants who had no actual contacts with anyone in West Virginia, and did so without analyzing whether their websites "directed" electronic activity into the State.

Although Williams never objected to that analysis as applied to Vitagliano, she objects now, attempting to distinguish the Default Defendants from Vitagliano by claiming that he was only a "collateral" defendant while the Default Defendants are "central" to her lawsuit. Such a distinction, however, is irrelevant to the jurisdictional inquiry and does not change the result of the Court's analysis.

Moreover, even if the Court had not required Williams to show actual contacts, it still would have examined each of the Default Defendants' websites under the first <u>ALS Scan</u> factor. In fact, its earlier Order analyzed whether some of the Default Defendants "directed" electronic activity into West Virginia, because Williams

18

presented evidence that people in West Virginia had accessed their websites.  As discussed below, however, for purposes of the ALS Scan analysis the website characteristics of all the Default Defendants are similar and evince no intentional targeting or focusing on West Virginia such that this Court could exercise personal jurisdiction over them.

### IV.  Application of the ALS Scan Standard

All of the Default Defendants' websites contained allegedly defamatory statements identifying Williams as the woman in the Sex Tape.  While the Court recognizes the hurtful and embarrassing nature of these statements, its decision whether to exercise jurisdiction over the Default Defendants must be determined by their actual conduct and connection with West Virginia.[4]  Paramount

---

[4]    In her motion, Williams argues that, in addition to determining the Default Defendants' connection to West Virginia, the Court must also assess the reasonableness of exercising personal jurisdiction over the Default Defendants, which she claims it did not do in its Order dated October 3, 2008.  She states that foreseeability is the touchstone of any personal jurisdiction analysis and that, if the Default Defendants defamed Miss West Virginia, it would be foreseeable that they would be haled into court in West Virginia for those actions.

Contrary to Williams's argument, in Burger King Corp. v. Rudzewicz, the United States Supreme Court clarified that

> the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State. Although it has been argued that foreseeability of causing injury in another

to that determination is consideration of whether the Default Defendants purposefully directed electronic activity into West Virginia with the manifest intent of engaging in business here. See Carefirst, 334 F.3d at 401. Even assuming that persons in West Virginia accessed each of the Default Defendants' websites, to make a prima facie showing of personal jurisdiction under ALS Scan Williams must show that the Default Defendants "directed" the electronic activity of their websites into West Virginia with the intent of targeting or engaging in business in West Virginia. ALS Scan, 293 F.3d at 714.

---

> State should be sufficient to establish such
> contacts there when policy considerations so
> require, the Court has consistently held that
> this kind of foreseeability is not a
> 'sufficient benchmark' for exercising personal
> jurisdiction.  Instead, 'the foreseeability
> that is critical to due process analysis . . .
> is that the defendant's conduct and connection
> with the forum State are such that he should
> reasonably anticipate being haled into court
> there.  . . .'[I]t is essential in each case
> that there be some act by which the defendant
> purposefully avails itself of the privilege of
> conducting activities within the forum State,
> thus invoking the benefits and protections of
> its law.'"

471 U.S. 462, 474-75 (1985)(citations omitted).
     The Court need not address the reasonableness of exercising jurisdiction in this case under the "fairness factors" of Burger King because that analysis is not undertaken until after a plaintiff has established that the defendant purposefully directed activity into the forum state.  See Id. at 476-77.

Williams contends that, by using the name West Virginia in their advertisements, the Default Defendants fashioned their websites with a local West Virginia character and thereby entered the West Virginia market and availed themselves of the privilege of conducting business here. Moreover, she asserts that the Default Defendants "directed" their websites into West Virginia because using the State's name effectively aimed their advertisements at West Virginia customers, and specifically to people drawn to a pornographic video of a former Miss West Virginia.[5] Finally, she relies on affidavits that she believes establish that West Virginians were "targeted" in West Virginia by the websites.

In determining personal jurisdiction based on Internet activity, however, the appropriate question is whether a website "directed" internet activity into a particular state with the intent of targeting or engaging in business in West Virginia. ALS Scan, 293 F.3d at 714. Whether the Default Defendants had the "manifest intent" to target people in West Virginia can only be

---

[5] Williams makes a separate argument that, in particular, the JuicyBucks Defendants entered West Virginia because users could pay for membership on their website by credit card, which required the user to choose his or her state from a drop-down menu that included West Virginia. She has never alleged that actual sales occurred in West Virginia, however. Hence, the Court's analysis has treated the JuicyBucks Defendants the same as the other Default Defendants, because all of the websites present similar, allegedly defamatory statements and offers to sell the Sex Tape.

determined from the character of their websites, and a pertinent part of that inquiry is whether the *overall content* of a website has a strongly local character.  See Carefirst, 334 F.3d at 401. Thus, merely arguing that the use of a state's name establishes purposeful availment and, despite the absence of other indicators, gives a website a local character, oversimplifies the analysis.

The overall content of a website must be determined by looking to the entire website, not solely whether a state's name is used. For instance, when the Fourth Circuit in Carefirst concluded that a website did not "direct" itself into Maryland, it found that the defendant non-profit organization's website had a strong local character relating to Chicago.  It based its finding on the fact that all of its offers of assistance, locations of operations, and program presentation sites were advertised as being in the Chicago area.  Id. at 401.  Those facts did not give the website a strong local character of the forum state (Maryland), since the only way the website reached out to Maryland was by a general request for donations from Internet users from anywhere in the world.  Id. Here, in a similar vein, the Court's October 3, 2008 Order concluded that Williams had failed to show that the Default Defendants' websites were anything other than generally accessible

websites offering sales or posting advertisements for sales to anyone in the United States and the Internet world.

Further consideration of this issue does not force a different conclusion. In Young, the Fourth Circuit looked at the defendants' websites to determine whether they exhibited the manifest intent to focus on and target people in the forum state. 315 F.3d at 263. Since the defendants provided access and links dealing with Connecticut weather, traffic information, colleges and government, it concluded that their websites served local interests in Connecticut and were meant to expand their circulation in and provide classified ads for local Connecticut markets. Id. It therefore held that the websites were not designed with an intent to attract or serve the people in the forum state of Virginia. Id.

Young also examined the specific articles on the defendants' websites to see whether they were posted with the intent to target a Virginia audience. Id. at 263-64. The articles discussed the allegedly harsh conditions at a Virginia prison and mentioned the prison by name, as well as naming the Virginia plaintiff in at least one article. Id. at 263. "The focus of the articles, however, was the Connecticut prisoner transfer policy and its impact on the transferred prisoners and their families back home in

Connecticut. . . . Connecticut, not Virginia, was the focal point of the articles." Id. at 263-64.

Here, the Default Defendants' websites lack the requisite local character to show they had a manifest intent of targeting people in West Virginia.  Pursuant to Young, the use of Williams's name and the name of West Virginia, and even her title as a former Miss West Virginia, are insufficient to endow the websites with the requisite local West Virginia character such that it can be said the Default Defendants targeted an audience in this state.  See id.

Nor does the overall content of the Default Defendants' websites have a local West Virginia character.  In her proposed trial exhibits, Williams provided copies of the allegedly defamatory websites for each of the Default Defendants, a review of which establishes that most of the advertisements for the Sex Tape are included among a variety of advertisements for other pornographic videos of other named and pictured people, some of whom are celebrities.  Nor are the websites solely dedicated to or geared toward West Virginia, in particular.

Finally, the focal point of the allegedly defamatory statements on the websites is not West Virginia.  In fact, it can be argued that these allegedly defamatory statements have no geographic focal point.  That they mention Williams's name and

24

title as a former Miss West Virginia does not make West Virginia the focal point of the statements any more than the written statements alleging that the woman in the Sex Tape is now a news anchor in Virginia makes that state the focal point.[6] Because there is nothing so peculiarly West Virginian about the Default Defendants' websites as to endow them with a strong local character, they do not exhibit a manifest intent to target West Virginia or West Virginia residents.

Williams therefore has failed to establish that the websites of the Default Defendants are anything other than generally accessible websites offering sales or posting advertisements to anyone in the United States and the Internet world. As this Court's previous Order discusses in detail, the fact that such generally accessible websites offer sales to anyone is insufficient to establish personal jurisdiction for suit in West Virginia. See ESAB Group, Inc. v. Centricut, Inc., 126 F. 3d 617, 625-26 (4th Cir. 1997)(holding that personal jurisdiction could not be asserted over a business offering sales generally in the United States, even

---

[6] In her Complaint, Williams alleges that almost all of the Default Defendants' websites contain variations of the statement "Allison Williams Miss West Virginia and TV reporter gets banged in camera truck! The little known news talent from a small town Virginia TV station is the next upcoming star." See Complaint, ¶¶ 106, 114, 127, 136, 145, 149, 174-175, 199, 219-220, 252-253, 269-70, 334-335, 382-383, 417.

though it had customers in the forum state, and noting that such a rule would make jurisdiction hinge on the plaintiff's choice of residence instead of on the defendant's purposeful availment or expressly aimed activities).

## V.  Conclusion

This Court is aware of Williams's contention that she has felt the brunt of the harm caused by the alleged defamation in West Virginia, her home state.  Moreover, it is aware of West Virginia's strong interest in having torts against its residents adjudicated here.  Despite those interests and the nature of the allegations, the controlling issue has always been whether the Default Defendants' actual conduct and connection with West Virginia was such that they should reasonably have anticipated being haled into court here.

After reconsidering its previous judgment and taking all facts and inferences in favor of the plaintiff, the Court concludes that it applied the correct analysis when it evaluated personal jurisdiction based on Internet activity under the ALS Scan test. Therefore, it once again concludes that Williams has failed to make a prima facie showing that the exercise of personal jurisdiction over the Default Defendants based on their Internet activities alone comports with due process.  The websites in question have no

strong local character, but are merely generally accessible websites advertising sales to anyone throughout the United States and the Internet world. Without more, such generally accessible websites cannot be said to "direct" internet activity into West Virginia in a manner that satisfies the due process requirements for personal jurisdiction.[7] <u>Carefirst</u>, 334 F.3d at 400-01; <u>ESAB Group</u>, 126 F. 3d at 625-26.

Because the Court's previous Order was neither clearly wrong as a matter of law nor manifestly unjust, it **DENIES** Williams's motion to alter or amend its judgment (dkt. no. 363), and also **DENIES** her motion for oral argument (dkt. no. 371). Furthermore, it finds no just reason to delay entry of a final judgment regarding these issues and, therefore, pursuant to Federal Rule of Civil Procedure 54(b), **CERTIFIES** this Order and its previous Order dated October 3, 2008, dismissing the Default Defendants for lack of personal jurisdiction, as final judgments. It also **DIRECTS** the Clerk to enter final judgment with respect to the dismissal of the

---

[7] Because Williams has failed to establish that the Default Defendants actually "directed" the allegedly defamatory electronic activity into West Virginia, the Court need not determine whether they had a manifest intent to engage in business or other interactions within the State. <u>ALS Scan</u>, 293 F.3d at 712.

Default Defendants and to transmit copies of this Order to counsel

of record and all <u>pro</u> <u>se</u> parties.

It is so **ORDERED.**

DATED: March 17, 2009.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE